`UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JASON J.,

                Plaintiff,            **DECISION AND ORDER**

      v.
                                       1:21-CV-00282 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Jason J. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 11), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted, and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on May 28, 2013. (Dkt. 6 at 742, 183-84).[1] In his application, Plaintiff alleged disability beginning March 8, 2010. (*Id.* at

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

742, 183).  Plaintiff's application was initially denied on August 16, 2013.  (*Id.* at 742, 99-110).  At Plaintiff's request, hearings were held before administrative law judge ("ALJ") Eric Glazer on April 21, 2015, and October 22, 2015.  (*Id.* at 742, 40-70, 71-87).  On March 30, 2016, the ALJ issued an unfavorable decision.  (*Id.* at 25-35).  Plaintiff requested Appeals Council review; his request was denied on August 31, 2017, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 742, 7-13).

Plaintiff sought judicial review, and on April 18, 2019, United States Magistrate Judge Michael J. Roemer issued a Decision and Order remanding the matter for further administrative proceedings, concluding that the ALJ relied on stale medical opinions evidence, misapplied the treating physician rule, and failed to fully develop the record.  (*Id.* at 742, 877-97).  On September 12, 2019, the Appeals Council issued an order remanding the case to an ALJ for further proceedings. (*Id.* at 742, 899-902).

New hearings were held before ALJ Bryce Baird on February 18, 2020, and October 20, 2020.  (*Id.* at 743, 795-847, 766-94).  On October 29, 2020, the ALJ issued an unfavorable decision. (*Id.* at 742-58).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is

- 2 -

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.      **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2015. (Dkt. 6 at 745). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity during the period from his alleged disability onset date of March 8, 2010, through his date last insured of December 31, 2015. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: degenerative disc disease of the thoracic, cervical, and lumbar spine, status post December 2013 lumbar spine fusion, and arthritis. (*Id.* at 746). The ALJ further found that Plaintiff's medically determinable impairments of left shoulder injury, carpal tunnel syndrome, left elbow medial epicondylitis, chronic pain syndrome, myalgia, muscle spasms, fatigue, vitamin deficiencies, sleep disturbance, history of poly-substance abuse, tremors, tobacco use disorder, tinea corporis, hypertension, hernia, history of obesity, gastroesophageal reflux disease, dermatitis, allergic rhinitis, sinusitis, dyspnea, chronic obstructive pulmonary disease, mood disorder, depressive disorder, and/or anxiety disorder were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 747). The ALJ particularly considered the criteria of Listing 1.04 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(b) "because he was able to lift, carry, push, and/or pull ten pounds occasionally and five pounds frequently, stand or walk for up to two hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday," except as follows:

> [Plaintiff] was able to engage in no more than thirty minutes of standing or walking at any one time, and he was able to stand or stretch up to one minute after sixty minutes of sitting ([Plaintiff] would have been off-task for the one minute of standing or stretching). [Plaintiff] was unable to operate foot controls with his bilateral feet, and while [Plaintiff] was unable to crawl or climb ladders, ropes, or scaffolds, he was able to occasionally balance, stoop, kneel, crouch, and climb ramps or stairs. [Plaintiff] was unable to tolerate exposure to excessive cold, excessive moisture/humidity, or excessive vibrations, and he was unable to tolerate exposure to workplace hazards such as unprotected heights and moving machinery. [Plaintiff] was able to engage in work limited to simple, routine tasks (that could have been learned after a short demonstration or within thirty days), and he was able to engage in work that did not require teamwork, such as on a production line.

(*Id.*). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 756).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of call-out operator, surveillance systems monitor, and elections clerk. (*Id.* at 757-58). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 758).

II.    **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred when he failed to adequately evaluate Plaintiff's degenerative disc disease under Listing 1.04, and (2) the ALJ erred in crafting the RFC by making highly specific limitations that were unsupported by medical opinions or other medical evidence in the record. (Dkt. 10-1 at 19-30). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

A.    **The Step Three Determination**

Plaintiff's first argument is that the ALJ failed to properly evaluate his impairment under Listing 1.04A, because "[t]he evidence in the record shows Plaintiff met listing 1.04(A) and the ALJ incorrectly found Plaintiff not disabled." (Dkt. 10-1 at 19). He contends that the ALJ failed to properly explain his analysis, leaving the decision not supported by substantial evidence. In response, the Commissioner contends that the ALJ provided a sufficient analysis at step three and that Plaintiff failed to show that he satisfied all of the requisite criteria. (Dkt. 11-1 at 20-28). The Court agrees with the Commissioner.

"Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (quotation and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment does not qualify."

*Rockwood*, 614 F. Supp. 2d at 272 (quotations and citations omitted). An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Id.* at 273 (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002) (alteration in original)); *Loescher*, 2017 WL 1433338, at *3 ("[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." (internal quotation marks and citations omitted)). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

Social Security regulations provide the following with regard to the requirements of Listing 1.04A[2]:

> Listing 1.04(A) requires—in addition to a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture—"[e]vidence

---

[2]     Listing 1.04 has since been eliminated but courts "apply the version of the social security regulations and rulings in effect at the time of the ALJ's decision." *Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 555 (2d Cir. 2020); *see also Lynda B. v. Kijakazi*, No. 21-CV-0237L, 2022 WL 17463832, at *2 n.1 (W.D.N.Y. Dec. 6, 2022) ("Listing 1.04 is no longer in effect, and subsequent regulatory revisions describe spinal disorders under different listings."); *Garcia v. Comm'r of Soc. Sec.*, No. 20CIV7539 (PAE)(SLC), 2022 WL 1051134, at *5 n.11 (S.D.N.Y. Jan. 31, 2022) ("The Court notes that Listings 1.02 and 1.04 were eliminated as of April 2, 2021. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Because they were in effect at the time of the ALJ's Decision, however, they still control for purposes of the Court's analysis."), *report and recommendation adopted*, No. 20CIV7539PAESLC, 2022 WL 970566 (S.D.N.Y. Mar. 31, 2022).

of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

*Scully v. Berryhill*, 282 F. Supp. 3d 628, 635 (S.D.N.Y. 2017) (citing Listing 1.04A).  The SSA "has provided further guidance regarding the assessment of Listing 1.04(A) in the form of an Acquiescence Ruling ('AR') issued in 2015."  *Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019); *see* SSR 15-1(4), 2015 WL 5564523, 80 Fed. Reg. 57418-02 (2015).

In AR 15-1(4), the SSA specifies "that for a disorder of the spine to meet listing 1.04A at step three in the sequential evaluation process, the claimant must establish the simultaneous presence of all the medical criteria in paragraph A."  2015 WL 5564523 at *57420.  After these criteria are established, "the claimant must also show that this level of severity continued, or is expected to continue, for a continuous period of at least 12 months."  *Id.*  "In other words, when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A."  *David C. v. Comm'r of Soc. Sec.*, No. 6:21-CV-06480 EAW, 2023 WL 2379007, at *6 (W.D.N.Y. Mar. 6, 2023); *see also Lynda B. v. Kijakazi*, No. 21-CV-0237L, 2022 WL 17463832, at *2 (W.D.N.Y. Dec. 6, 2022) ("Sporadic findings that some of a listing's requirements are intermittently met are not sufficient, particularly when compared with episodes of contrary findings during the relevant period."); *Justin T. v. Kijakazi*, No. 20-CV-1906L, 2022 WL 6190406, at *2 (W.D.N.Y. Oct. 7, 2022) ("While plaintiff points to record evidence of

- 9 -

nerve root compression with neuro-atomic distribution of pain, limited range of motion in the lumbar spine, sensory or reflex loss, and positive straight-leg raising tests, such findings do not appear to be simultaneous and/or consistent throughout any period of sufficient length to satisfy the durational requirement.").

At step three of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 1.04A, stating that:

> The criteria in Listing 1.04 requires medical evidence of a disorder of the spine (*e.g.* herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively. Objective medical evidence shows degenerative disc disease of the cervical, lumbar, and thoracic spine; however, there is no evidence of nerve root compression with sensory and reflex loss along with positive straight-leg raising tests. There is no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in an inability to ambulate effectively. Thus, I find that Listing 1.04 was not met through the date last insured.

(*Id.* at 747).

Plaintiff points to certain evidence in the record that he contends satisfies the requirements of Listing 1.04A. However, other evidence in the record contradicts this assertion, underscoring that his symptoms waxed and waned over time, and therefore were not simultaneously present for a period of at least 12 months.

For example, Plaintiff cites to records that demonstrated abnormal deep tendon reflexes, and` notes positive straight leg findings documented throughout the administrative record, as well as numerous examples of diminished sensation and brisk reflexes. (*See* Dkt. 10-1 at 21). But the ALJ also cited to extensive medical records and

opinion evidence in the decision which support his conclusion as to this Listing. (Dkt. 6 at 749-56). Those records include a May 24, 2010 examination with Cameron Huckell, M.D., which reflects full strength in the bilateral lower extremities, negative straight leg raising in the supine position, and with sensation instant to light touch at the bilateral upper and lower extremities in all major dermatomes. (Dkt. 7 at 748). In April of 2011, independent medical examiner John Ring, M.D., examined Plaintiff and documented straight leg raising of 20 degrees on the right and 35 degrees on the left but with reflexes equal and active. (Dkt. 6 at 317). Dr. Ring further noted that sensation to pinprick and light touch was intact in the lower extremities. (*Id.*). A January 2, 2012 physical examination by Michael Calabrese, M.D., reflected positive straight leg raise on the right but full strength in the lower extremities and sensation intact to light touch, (*id.* at 393-94), and July and December 2012 examinations with Melvin Brothman, M.D., reflect full strength of his lower extremities, intact sensation, and negative straight leg raise testing (*id.* at 301, 305). Similarly, Plaintiff's July 2013 examination with Samuel Balderman, M.D., "revealed a normal gait, no acute distress, a full squat, balance difficulties walking on heels and toes, a normal stance, no use of assistive devices, an ability to change for the exam, get on and off the exam table, and rise from a chair, a limited range of motion of the cervical and lumbar spines with negative straight-leg raising tests, no sensory deficits, [and] full strength in the upper and lower extremities." (*Id.* at 750). The ALJ also cited a 2015 EMG

and nerve conduction study that showed normal findings and noted that Plaintiff "had a normal gait with some difficulty rising from a sitting position." (*Id.* at 751).

Further, to the extent that Plaintiff relies on the testimony of independent medical expert Arthur Lorber, M.D., to support his contention that the requirements of Listing 1.04(A) were met, the Court finds that the ALJ appropriately explained his reasoning in not crediting that opinion. Specifically, at the February 18, 2020 hearing, Dr. Lorber testified that the requirements of Listing 1.04(A) were met as of March 2010. (*Id.* at 805). But after that hearing, Plaintiff submitted 2,000 additional pages of medical evidence, and the ALJ requested that Dr. Lorber re-review the file for the supplemental hearing on October 20, 2020. At the October 20, 2020 hearing, Dr. Lorber testified that Plaintiff met or medically equaled Listing 11.08 rather than 1.04. (*Id.* at 790 ("So, we'll switch the listing from 1.04 to 11.08.")). He explained the change in his opinion occurred because he "apparently did not review the record at [the previous hearing] as thoroughly as [he had] this time." (*Id.* at 792). The ALJ explained in detail why he gave no weight to Dr. Lorber's opinions. Specifically, the ALJ stated:

> However, since there was such an extensive workers' compensation element to this claim, the medical file is replete with opinions, as specifically outlined above. In an effort to reconcile all the opinions, which all vary slightly, I obtained input from medical expert Arthur Lorber, M.D., who did not examine the claimant, but instead reviewed the file (Exhibits 19F and 23F). Dr. Lorber testified at the February 18, 2020 hearing that the claimant's impairments met Listing 1.04A from the alleged onset date of March 2010 until December 2014, which was one year after the lumbar fusion surgery. After the February 18, 2020 hearing, the claimant and his representative submitted nearly 2,000 pages of additional medical evidence, some of which contained new non-disabling opinions, so I asked Dr. Lorber to review the file again, and I held a supplemental hearing on October 20, 2020 for Dr. Lorber's updated testimony. Dr. Lorber provided contrary testimony at the supplemental hearing. This time, after being directly asked about the various

opinions in the record that contradicted his opinion that the claimant met Listing 1.04A for a closed period, Dr. Lorber testified at the October 20, 2020 hearing that he changed his opinion, that he now opined that the claimant's impairments medically equaled Listing 11.08B.  Dr. Lorber explained that he had not reviewed the record as thoroughly as he did this time.  Dr. Lorber indicated that he was relying on evidence, such as Dr. Dave's November 2019 consultative orthopedic examination, that was dated well after the date last insured of December 31, 2015.  I note that Dr. Lorber's opinions are complete outliers from all other opinions in this file.  Dr. Lorber did not identify the objective findings that support any determination that Listing 1.04 or 11.08 is met. At the October 2020 hearing, Dr. Lorber testified in broad general terms, about what symptoms a 'pars defect' might cause, and generally what the treatment for someone might be, and generally that it can be hereditary, and generally that it can be asymptomatic for years, but he did not provide any specifics.  He suggested that Listing 11.08 could be met or equaled, but there is no evidence in the medical record to support this.  Dr. Lorber stated that "something" must have happened between the relatively benign findings and limitations post-surgery and the November 2019 consultative examination findings, but Dr. Lorber could not identify such an event.  I give no weight to the opinions of Dr. Lorber because they are not supported by adequate explanation and because they are not consistent with the other medical opinions in the record.

(Dkt. 6 at 753-54).  The Court finds the ALJ provided ample support for his conclusion that Dr. Lorber's opinions were entitled to no weight.

In sum, although Plaintiff points to certain evidence in the record he contends supports that Listing 1.04A was met, it is the ALJ who is tasked with resolving conflicts in the record.  *See Donald A. v. Saul*, No. 1:19-CV-01146-MJR, 2021 WL 672043, at *6 (W.D.N.Y. Feb. 22, 2021) ("The presence of conflicting medical evidence is not uncommon, and it is the ALJ's duty to resolve those conflicts.").  Accordingly, while "Plaintiff may disagree with the ALJ's conclusion," the Court "must defer to the Commissioner's resolution of conflicting evidence and reject the ALJ's findings only if a reasonable factfinder would have to conclude otherwise." *Daniel G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1211 (WBC), 2023 WL 155426, at *7 (W.D.N.Y. Jan. 11, 2023)

(citations and quotations omitted).  As explained above, it is sufficiently clear to the Court how the ALJ arrived at the step three determination and that his conclusion is supported by the record.  For those reasons, remand is not required on this basis.

**B.**    **The ALJ's Determination that Plaintiff Requires a Sit/Stand Option is Supported by Substantial Evidence**

In determining Plaintiff's RFC, the ALJ assessed a sit/stand option that Plaintiff is "able to engage in no more than thirty minutes of standing or walking at any one time" and is "able to stand or stretch up to one minute after sixty minutes of sitting ([Plaintiff] would have been off-task for the one minute of standing or stretching)."  (Dkt. 6 at 747).  Plaintiff argues that the ALJ's opinion does not address how he arrived at the specific sit/stand option.  (Dkt. 10-1 at 22-29).  Therefore, Plaintiff argues, the determination is not supported by a medical opinion or by substantial evidence.  (*Id.*).  In response, the Commissioner argues that the ALJ's reasoning can be gleaned from his decision and the medical opinions and substantial evidence support the determination.  (Dkt. 11-1 at 8-20).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the

> claimant argues either that the RFC is not supported by substantial evidence
> or that the ALJ has erred by failing to develop the record with a medical
> opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec.

1, 2017) (quotations and citations omitted).  "[A]s a result[,] an ALJ's determination of

RFC without a medical advisor's assessment is not supported by substantial evidence."

*Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation

omitted).

However, an ALJ does not commit reversible error where he gives a claimant the

benefit of the doubt and assesses limitations more severe than those supported by the

medical evidence of record based on the claimant's subjective complaints.  *See, e.g.,*

*Lynneesa M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184, at *5

(W.D.N.Y. Sept. 28, 2021) ("[This] is a case in which the ALJ, in fashioning the RFC,

exercised her discretion to assess limitations more severe than those supported by the

medical evidence of record in deference to Plaintiff's testimony.  This does not constitute

reversible error."); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y.

2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was

easily distracted, and assessed a more generous limitation of 5% off-task time.  The fact

that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time

limitation in the RFC assessment is not grounds for remand." (internal citation omitted)).

In this case, none of the medical opinions expressly opined that Plaintiff should be limited

to no more than thirty minutes of standing or walking at any one time with an ability to

stand or stretch up to one minute after sixty minutes of sitting, as set forth in the RFC.

However, this is not a case where there was a complete absence of medical opinion evidence relating to sitting and standing; to the contrary, the ALJ cited to numerous opinions addressing this limitation throughout his decision.

For example, the ALJ cited the May 2010 opinion of Dr. Huckell, who opined that Plaintiff "should avoid bending, stooping, reaching, twisting, crawling, or climbing . . . [Plaintiff] should avoid sitting, standing, or walking for more than two hours at one time without a break and the total workday should not exceed eight hours." (Dkt. 6 at 749).  The ALJ gave this opinion significant weight, but "note[d] that Dr. Huckell's opinions that [Plaintiff] should avoid bending, stooping, reaching, and twisting appear somewhat overstated when compared to the balance of the evidence in the record, including reported activities of daily living." (*Id.* at 755).

The ALJ also cited a July 2011 chiropractic treatment note, which followed a report of increased pain after a weekend out of town, that indicated that Plaintiff "should avoid fixed positions for long periods of time, even five to six minutes at most, but added that the claimant should remain active—the notes show that the claimant reported a good response to treatment with an improved ability to sit for longer periods of time." (*Id.* at 749).  The ALJ gave this opinion significant weight due to Dr. Skowronek's expertise, physical examinations of Plaintiff, and consistency with other medical evidence. (*Id.* at 755).

The ALJ considered a May 2012 Functional Capacity Evaluation performed by Dr. Calabrese, after which Dr. Calabrese opined in May 2012, June 2012, July 2012, August 2012, September 2012, October 2012, December 2012, January 2013, February 2013, and

March 2013 that Plaintiff could "work "in a sedentary to light job . . .in a work day he can sit up to four hours per day, walk up to two hours, and stand up to two to four hours per day at present with regular change of postures . . . " (*Id.* at 749-50).  In April 2013, Dr. Calabrese opined that Plaintiff "is able to engage in a 'sedentary job, max four hours sit, max two hours walk, and max four hours stand, daily, alternate positions.'" (*Id.* at 750). The ALJ indicated that he gave Dr. Calabrese's opinions significant weight and noted that Dr. Calabrese's "position-change opinions were carefully considered when devising the above-listed residual functional capacity, [but] that Dr. Calabrese's sitting limitation of four hours appears somewhat overstated when considered in balance with the other opinions in this file." (*Id.* at 754-55).

The ALJ addressed a June 2013 report from independent medical examiner Steven Hausmann, M.D., who indicated that he "would recommend [that] . . . [Plaintiff] may stand and walk up to four hours per day and sit the remainder of the time with breaks and position changes." (*Id.* at 751).  The ALJ gave very significant weight to Dr. Hausmann's opinions due to his expertise, his physical examination of the Plaintiff post-lumbar fusion surgery and prior to the date last insured, and the consistency of his opinions with the other medical evidence.  (*Id.* at 754).

Finally, the ALJ cited to a November 2019 consultative orthopedic examination with Nikita Dave, M.D., who opined that the Plaintiff "is able to . . . sit for eight hours in an eight-hour workday, stand for four hours in an eight-hour workday, [and] walk for four hours in an eight-hour workday." (*Id.* at 752).  The ALJ gave reduced weight to Dr. Dave's opinions because the examination was performed almost four years after the date last

insured, but found the report "insightful for information regarding [Plaintiff's] continued functioning and provided no information about any intervening incidents or significant exacerbations." (*Id.* at 756).

In addition, Plaintiff testified at the hearing that he had a great deal of difficulty with standing, walking, and sitting, which was cited in the ALJ's decision. (*Id.* at 748, 835-36). Specifically, Plaintiff testified that he is able to sit no longer than thirty minutes before he needs to stand. (*Id.* at 836). The ALJ explained that he weighed Plaintiff's subjective complaints against the medical assessments. (*See id.* at 748). The Court cannot conclude that the ALJ's resolution of these conflicting aspects of the record was outside his discretion. *See Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021) ("It was further not erroneous for the ALJ to partially credit Plaintiff's testimony regarding her own limitations and assess more restrictive manipulative and environmental limitations than those identified by the consultative examiners.").

This case is distinguishable from *Balistrieri v. Saul*, No. 19-CV-293-MJR, 2020 WL 2847501, at *1 (W.D.N.Y. June 2, 2020), in which there were no medical opinions and the ALJ relied solely on her own lay interpretation of medical evidence in crafting a highly specific RFC, as well as other cases in which an ALJ has, without explanation, interpreted a vague medical opinion as supporting a highly specific sit/stand option, *see, e.g., Cheek v. Comm'r of Soc. Sec.*, No. 1:18-CV-01455 EAW, 2020 WL 2028258, at *4 (W.D.N.Y. Apr. 28, 2020) (concluding that RFC finding was unsupported by substantial evidence where the ALJ included a highly specific sit/stand limitation based solely on medical opinion that Plaintiff had "moderate limitations" for walking and standing). Here, the ALJ was not

purporting to craft a highly specific RFC based solely on his own lay interpretation. Instead, he permissibly partially credited Plaintiff's subjective complaints in connection with the vast medical evidence before him and accordingly included in the RFC finding a limitation that was not expressly identified by the medical opinions of record.  On these facts, this does not entitle Plaintiff to a reversal of the Commissioner's determination.  *See Mary Diane K.*, 541 F. Supp. 3d at 277 ("Here, the ALJ explained that she was affording Plaintiff the benefit of the doubt and crediting her statement that her symptoms increased with use of her hands, as well as taking into account her testimony regarding her cervical spine impairments. . . . This is simply not a basis for reversal."); *Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *6 (W.D.N.Y. Sept. 16, 2020) ("[The plaintiff] essentially argues that the ALJ was wrong to accept portions of her testimony regarding her limitations, which were not covered in a medical source opinion. But this does not constitute reversible error.").

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 31, 2023
       Rochester, New York